<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

**AVATAA USA, LLC.,**

                Plaintiff,

                v.

**FEODOR YAMINSKY,** *et al.*,

                Defendants.

Civil Action No. 24-6314 (ZNQ) (TJB)

**OPINION**

<u>QURAISHI, District Judge</u>

**THIS MATTER** comes before the Court upon two motions to dismiss the Complaint ("Compl.," ECF No. 1): (1) a motion filed by Defendants Verdant Advisers LLC ("Verdant") and David Wilkinson ("Wilkinson"), the managing director of Verdant ("the Verdant Motion," ECF No. 12); and (2) a motion filed by Defendants Feodor Yaminsky ("Yaminsky"), HQ Avataa S.L., and Avataa UAE (the "Yaminsky Motion," ECF No. 27).[1] Defendants independently submitted moving briefs in support of the Motions. ("Moving Br. I," ECF No. 14-1; "Moving Br. II," ECF No. 27-1.) Defendants also submitted various exhibits (ECF Nos. 14-2 to 14-5; 27-2 to 27-15.) Plaintiff Avataa USA, LLC ("Avataa USA" or "Plaintiff") filed briefs in opposition to both motions. ("Opp'n Br. I," ECF No. 16; "Opp'n Br. II," ECF No. 29.) Defendants submitted replies. ("Reply Br. I," ECF No. 20; "Reply Br. II," ECF No. 32.) The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to

---

[1] Defendants Dmitry Skripnik ("Skripnik"), the Chief Operations Officer of Avataa USA, and Start Innovations, S.L., now known as HQ Avataa S.L., are named as defendants. Skripnik is not represented by counsel and has not filed a motion to dismiss or otherwise joined the Verdant or Yaminsky motions.

Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.[2]  For the reasons set forth below, the Court will (1) **GRANT** the Yaminsky Motion as to Avataa UAE with respect to Counts One and Four; (2) **DENY** the Yaminsky Motion as to Yaminsky and HQ Avataa S.L.; (3) **ORDER** that Avataa USA, Yaminsky, and HQ Avataa S.L. proceed to jurisdictional discovery, limited to the question of whether the Court has personal jurisdiction over Yaminsky and HQ Avataa S.L.; (4) **DECLINE** to exercise jurisdiction over Counts Two and Five; and (5) **GRANT** the Verdant Motion as to Counts Three and Four.

## I.    BACKGROUND AND PROCEDURAL HISTORY

### A.  Factual Background[3]

The factual background is complicated given that there are several individuals and entities involved in this lawsuit.  The history begins with nonparty Chad Schwartz, P.E. ("Schwartz"), who is a founding member and Chief Executive Officer ("CEO") of Ahead Engineering, LLC ("Ahead Engineering"), a full-service telecommunications engineering firm, that would later merge with Defendant Start Innovations, S.L, and then become Plaintiff Avataa USA.  (*Id.* ¶¶ 18, 20.)  As of the date of the Complaint, Schwartz owns thirty percent of Avataa USA.  (*Id.*)  Nonparties Kyle McGinley ("McGinley"), Robert Pietrocola ("Pietrocola"), and Ryan Waldron ("Waldron") are members of Ahead Engineering, each owning an eight percent membership interest in Avataa USA.  (*Id.* ¶ 19.)  Together, Schwartz, McGinley, Pietrocola, and Waldron own a majority interest in Avataa USA.  (*Id.* ¶ 22.)  Prior to the existence of Avataa USA, Ahead Engineering developed a project management software product for the cellphone industry, known as "GAS," designed to

---

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[3] For the purposes of considering the Motions, the Court accepts all factual allegations in the Complaint as true.  *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

provide workflow, engineering, and site work field data collection function for small cell site networks. (*Id.* ¶ 21.)

Defendants Verdant and Wilkinson provide merger and acquisition advisory services and consulting to software technology and wireless communication entities. (*Id.* ¶ 23.) In December 2020, Schwartz and Wilkinson developed a business relationship where Wilkinson introduced Ahead Engineering to "strategic parties" who could assist them in "scaling" GAS. (*Id.* ¶ 24.) As a result, Wilkinson introduced Ahead Engineering to Defendant Yaminsky, the owner of Start Innovations, S.L. ("Start"), because Start purportedly had the expertise to develop GAS into a commercial and valuable software platform. (*Id.* ¶ 25.) In exchange for the introduction and promised future consulting, Verdant and Wilkinson requested that Verdant receive four percent "phantom equity shares" in Ahead Engineering. (*Id.* 26.) Wilkinson provided Schwartz with a consulting agreement in July 2021 that Ahead Engineering and its partners did not sign. (*Id.*) That agreement stated that the information provided by Ahead Engineering to Verdant will be governed by a non-disclosure agreement; Wilkinson and Verdant were supposed to draft the non-disclosure agreement which never came to fruition. (*Id.* ¶ 27.)

At a later time, Wilkinson and Verdant assured Schwartz and Ahead Engineering that "due to Verdant's existing relationship with Start and Yaminsky, they could be trusted with [Ahead Engineering's] confidential and proprietary information." (*Id.* ¶ 28.) Relying on these representations, in January 2021, Ahead Engineering provided Verdant and Start with "certain information from which it could evaluate [Ahead Engineering's] existing platform." (*Id.* ¶ 29.) Around that same time, Ahead Engineering issued its first purchase order to Start whereby it would pay Start $20,000 for services, including software production and development. (*Id.* ¶ 30.) In connection with this purchase order, Ahead Engineering gave Start access to the proprietary GAS

software, templates, sample output from the software, and other business plans. (*Id.*) Ahead Engineering, Start, and Verdant agreed that Ahead Engineering would own the product being developed under the purchase order. (*Id.* ¶ 32.)

Start completed the work in March 2021. However, Start, along with Yaminsky, did not produce the architecture called for in the purchase order until October 2022 or the project plan until November 2022. (*Id.* ¶ 34.) In fact, as alleged, "an entirely new architecture was required because the Start platform was inadequate and a complete replacement of the platform was required." (*Id.*) It was at this time that Ahead Engineering realized that its product—which was to be developed and promoted by Wilkinson and Start—would not come to fruition. (*Id.* ¶ 35.) Nevertheless, Ahead Engineering and Start entered into a second phase of the purchase order. (*Id.* ¶ 37.)

As part of this second phase, the parties agreed to form a jointly owned company headquartered in New Jersey; that company was originally named "Ahead Start, LLC," combining Ahead Engineering and Start Innovations, S.L., but was later changed to Avataa USA, the Plaintiff in this action. (*Id.* ¶ 40.) After the startup of Avataa USA, Ahead Engineering provided it with all of its confidential information and made multiple monetary contributions to the business. (*Id.* ¶ 46.)

Plaintiff further alleges that after the creation of Avataa USA, Schwartz, Yaminsky, and various members from Ahead Engineering met numerous times about the GAS workflow module, with the Ahead Engineering members requesting certain functions to be added to the software in light of security issues. (*Id.* ¶ 52.) To satisfy the Ahead Engineering members' requests, Yaminsky and Start needed to program a workaround to the platform, which they promised to do yet never did. (*Id.*)

In January 2022, Wilkinson informed Ahead Engineering that Yaminsky had formed new companies, Defendants HQ Avataa S.L. and Avataa UAE, to replace Start as the developer of the GAS product. (*Id.* ¶ 54.) Thereafter, Wilkinson requested that Ahead Engineering start paying a monthly amount of $25,000 for ten full-time developers rather than on a task-by-task basis. (*Id.*) Ahead Engineering agreed to that request as an accommodation to Yaminsky and Wilkinson. (*Id.*) It was later discovered that "H.Q. Avataa SL was not actually a new company, but was instead the renaming of Start Innovations S.L. . . . [and] that the Defendants had assigned only 5 full-time developers, rather than the 10 that [Ahead Engineering] was paying for. (*Id.*)

In February 2022, despite these ongoing issues, the parties presented GAS at the Mobile World Congress trade show in Barcelona, Spain. (*Id.* ¶ 56.) Wilkinson thereafter began to set up calls with individuals in the communications industry for demonstrations of GAS. (*Id.* ¶ 58.) In September 2022, Yaminsky forwarded to Schwartz a draft business plan—drafted by Wilkinson—which contained a provision where Ahead Engineering would transfer all of its intellectual property to Avataa UAE. (*Id.* ¶ 59.) Ahead Engineering refused to agree to the draft business plan. (*Id.*) In November 2022, Yaminsky and Wilkinson advised Ahead Engineering that it needed more time to create a commercial platform, which "could be reduced to 18 months, if [Ahead Engineering] doubled their rate of investment in [Avataa USA]." (*Id.* ¶ 60.) Instead of doubling the investment, the parties agreed that a third party developer would assist in developing the commercial platform and software components of GAS. (*Id.* ¶¶ 62–64.)

On February 28, 2023, Schwartz met Wilkinson at the 2023 Mobile World Congress trade show in Barcelona. (*Id.* ¶ 65.) Due to conflicts of interest, Wilkinson informed Schwartz that he should confer directly with Yaminsky to settle outstanding issues with the software; however, as alleged, "Yaminsky [was] evasive." (*Id.*) Plaintiff alleges that "Wilkinson and Yaminsky

excluded Schwartz from every prescheduled meeting . . . while presumably [continuing] to market GAS and its derivatives to the industry." (*Id.* ¶ 66.) Thus, at all relevant times, "Yaminsky misled Schwartz and the [Ahead Engineering] Partners as to the extent to which [GAS] had been developed and expressly denied that there was a project plan or specification for the [Avataa USA] product under development so as to hide from [Ahead Engineering] the fact that [the] product was built on [Ahead Engineering] intellectual property." (*Id.* ¶ 67.)

To make matters worse, in March 2023, Schwartz learned that Yaminsky's company, HQ Avataa S.L., was developing a product based on Ahead Engineering's original GAS project platform and the confidential information Ahead Engineering provided to Yaminsky. (*Id.* ¶¶ 68–70.) Later that month, Plaintiff alleges that "Yaminsky finally admitted that there were actually two versions of the [GAS] software, the original version based atop the Start Platform, which he acknowledged was not fit for multi-customer, multi-use-case purposes, and a new and improved version which is suitable for scaled applications." (*Id.* ¶ 73.) Yaminsky developed this "improved" software without Ahead Engineering's or Avataa USA's consent, despite using its intellectual property. (*Id.*)

In June 2023, as a result of all the issues between the parties, Wilkinson asked to withdraw Verdant's interest in Avataa USA. (*Id.* ¶ 79.) As of the date of the Complaint, "Yaminsky claims that HQ Avataa S.L and Avataa UAE now own [Avataa USA]'s intellectual property and the work product of the services paid for by the [Ahead Engineering] members," (*id.* ¶ 80), and Yaminsky refuses to relinquish control of all work product developed by Avataa USA and paid for by Ahead Engineering. (*Id.* ¶ 81.) Moreover, "Yaminsky, HQ Avataa S.L., Avataa UAE, Wilkinson[,] and Verdant wrongfully claim that the work product bought and paid for by [Avataa USA] and [Ahead Engineering] belongs to HQ Avataa S.L. and Avataa UAE." (*Id.*)

**B. Procedural History**

The Complaint asserts five claims: Count One alleges misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836, *et seq.*, against Yaminsky, Skripnik, Start, HQ Avataa S.L. and Avataa UAE; Count Two alleges misappropriation of trade secrets in violation of the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. Ann. § 56.16, *et seq.*, against Yaminsky, Skripnik, Start, HQ Avataa S.L. and Avataa UAE; Count Three is an aiding and abetting claim for the misappropriation of trade secrets against Verdant and Wilkinson; Count Four alleges conspiracy against Yaminsky, Skripnik, Avataa UAE, Start, HQ Avataa S.L., Verdant, and Wilkinson; and Count Five alleges breach of contract against Yaminsky, Skripnik, Avataa UAE, Start, and HQ Avataa S.L.

Defendants Verdant and Wilkinson filed a Motion to Dismiss seeking dismissal of Counts Three and Four of the Complaint—the only claims against them. (ECF No. 12.)  Similarly, Defendants Yaminsky, HQ Avataa S.L., and Avataa UAE filed a Motion to Dismiss seeking dismissal of all counts except for Count Three—aiding and abetting, which does not name them. (ECF No. 27.)

## II.    <u>SUBJECT MATTER JURISDICTION</u>

The Court has subject matter jurisdiction over the DTSA claim pursuant to 28 U.S.C. § 1331.  It has supplemental jurisdiction over the Complaint's state law claims pursuant to 28 U.S.C. § 1367.

## III.    <u>LEGAL STANDARD</u>

Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and

the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957) (abrogated on other grounds)).

A district court conducts a three-part analysis when considering a motion to dismiss pursuant to Rule 12(b)(6). *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Second, the court must accept as true all of the plaintiff's well-pled factual allegations and "construe the complaint in the light most favorable to the plaintiff." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation omitted). The court, however, may ignore legal conclusions or factually unsupported accusations that merely state the defendant unlawfully harmed the plaintiff. *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555). Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler*, 578 F.3d at 211 (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 663).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005) (citing *Kehr Packages, Inc. v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991)). Lastly, generally, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). But where a document is "integral to or explicitly relied upon in the complaint," it "may be considered without converting the motion to dismiss into one for summary judgment" under Rule 56. *Doe v. Princeton Univ.*, 30 F.4th 335, 342 (3d Cir. 2022).

IV.    **DISCUSSION**

In light of the two separate motions filed by the different defendants, the Court will first address whether it should dismiss the claims against Yaminsky, HQ Avataa S.L., and Avataa UAE. Next, the Court will address whether to dismiss the claims against Verdant and Wilkinson.

A.    **Claims Against Yaminsky, HQ Avataa S.L., and Avataa UAE**

In their Motion, Yaminsky, HQ Avataa S.L. and Avataa UAE (hereinafter, "Defendants") argue that the Court lacks personal jurisdiction over them because they are based in Spain, where a majority of the business was conducted. (Moving Br. II, at 2.)[4] Defendants separately argue that Plaintiff fails to state a claim for (1) misappropriation of a trade secret under both the DTSA and NJTSA, (2) conspiracy, and (3) breach of contract. (*Id.*) In opposition, Plaintiff argues that there is personal jurisdiction over Defendants, but that even if there is not, the Court should send the parties to conduct jurisdictional discovery. (Opp'n Br. II, at 16.)

The Court will first consider whether it has personal jurisdiction over Yaminsky and HQ Avataa S.L. Next, the Court will consider the merits of Plaintiff's claims.

1.    Personal Jurisdiction

Pursuant to Rule 12(b)(2), a complaint is subject to dismissal for lack of personal jurisdiction. *See* Fed. R. Civ. P. 12(b)(2). The plaintiff "bears the burden of demonstrating the facts that establish personal jurisdiction." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). "If the district court does not hold an evidentiary hearing, the plaintiff[] need only establish a *prima facie* case of personal jurisdiction." *Metcalfe v. Renaissance Marine, Inc.*, 566 F.3d 324, 330 (3d Cir. 2009) (internal quotations and citation omitted). "It is well established that in deciding a motion to dismiss for lack of jurisdiction, a court is required to accept the plaintiff's

---

[4] Avataa UAE withdrew its argument that the Court does not have personal jurisdiction over it. (Reply Br. II, at 3 n.1 ("Avataa UAE will not be pursuing the argument that the Court does not have jurisdiction over it."))

allegations as true, and is to construe disputed facts in favor of the plaintiff." *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 457 (3d Cir. 2003). Still, "[w]hile disputed issues are construed in favor of the plaintiff, allegations may be contradicted by the defendant through opposing affidavits or other evidence, at which point the plaintiff must respond with 'actual proofs, not mere allegations.'" *Am. Bd. of Internal Med. v. Rushford*, Civ. No. 14-6428, 2015 WL 5164791, at *5 (D.N.J. Sept. 2, 2015) (quoting *Patterson by Patterson v. FBI*, 893 F.2d 595, 603 (3d Cir. 1990)).

"A federal court sitting in New Jersey has jurisdiction over parties to the extent provided under New Jersey state law." *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing Fed. R. Civ. P. 4(e)). And "the New Jersey long-arm statute permits the exercise of personal jurisdiction to the fullest limits of due process." *IMO Indus., Inc. v. Kiekert AG*, 155 F.3d 254, 259 (3d Cir. 1998) (citations omitted). "Personal jurisdiction under the Due Process Clause depends upon the relationship among the defendant, the forum, and the litigation." *Id.* (internal quotation marks and citation omitted). More precisely, "[t]he Due Process Clause of the Fourteenth Amendment requires that non-resident defendants have 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007) (quoting *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)).

"There are two distinct theories under which personal jurisdiction can arise: general and specific." *Allaham v. Naddaf*, 635 F. App'x 32, 37–38 (3d Cir. 2015) (citing *Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994)). "A court has general jurisdiction when a defendant has 'continuous and systematic' contacts with the forum state." *Id.* (quoting *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 317 (3d Cir. 2007)).

Here, there is no dispute that there is no general jurisdiction over Defendants.  (*See* Opp'n Br. II, at 6 n.1.)  Therefore, the Court considers only specific personal jurisdiction.

The inquiry as to whether a court may exercise specific personal jurisdiction over a non-resident defendant is tripartite.  *See O'Connor*, 496 F.3d at 317.  First, "the defendant must have 'purposefully avail[ed] itself of the privilege of conducting activities within the forum.'"  *Id.* (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)).  "[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."  *Hanson*, 357 U.S. at 253.  The contacts must be the defendant's own choice and not "random, isolated, or fortuitous."  *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); *see Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (stating that for specific personal jurisdiction, the defendant must have "deliberately 'reached out beyond' its home" (quoting *Walden v. Fiore*, 571 U.S. 277, 285 (2014))).  The unilateral activity of a third party cannot satisfy the requirement that the defendant have minimum contacts with the forum state.  *See Hanson*, 357 U.S. at 253 (noting that the mere "unilateral activity of those who claim some relationship with a non-resident defendant cannot satisfy the requirement of contact with the forum State").

Second, if there is purposeful availment by a non-resident defendant, a court may exercise personal jurisdiction over that defendant only when a plaintiff's claims "arise out of or relate to the defendant's contacts" with the forum state.  *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 262 (2017); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984).

Third, if the non-resident defendant purposefully avails itself, and the plaintiff's claims arise out of or relate to the defendant's contacts with the forum state, "due process requires . . . that the maintenance of the suit [against the defendant] does not offend 'traditional notions of fair

play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).  And in determining whether the requirement to comport with "fair play and substantial justice" is satisfied, the court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief.  *Asahi Metal Indus. Co. v. Superior Ct. of Cal.*, 480 U.S. 102, 113 (1987).  It must also weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."  *Id.* (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

For the reasons set forth below, the Court finds that the issue of whether there is personal jurisdiction over Yaminsky and HQ Avataa S.L. cannot be resolved on this record.  The record contains competing certifications and factual assertions regarding whether Yaminsky and HQ Avataa S.L. purposefully availed themselves of New Jersey's benefit.  For example, the Complaint alleges that (1) Yaminsky is a member of Avataa USA which, although a Delaware entity, has its principal place of business in New Jersey, (2) Yaminsky is the CEO of Avataa USA, (3) Yaminsky conducted business in New Jersey with Schwartz and others, (4) Yaminsky allegedly conspired to convert trade secrets and other proprietary information in New Jersey, (5) Yaminsky helped form Plaintiff's business in New Jersey; and (6) Yaminsky owns 38 percent of Avataa USA.  (Compl. ¶¶ 12, 41, 43.)  Additionally, the Complaint provides that Yaminsky made promises and representations to Avataa USA and Schwartz in New Jersey, which he allegedly failed to live up to, (*id.* ¶ 45), that Ahead Engineering is a New Jersey-based company and that Yaminsky conducted business with them in New Jersey, (*id.* ¶ 20), and that Yaminsky (with Verdant) provided information for Avataa USA's tax submissions (*id.* ¶ 53).  Plaintiff lastly alleges that the parties agreed they would form a joint venture headquartered in New Jersey which is sufficient for

12

purposes of personal jurisdiction.  (*Id.* ¶ 38.)  To be clear, the Court construes these allegations in favor of Plaintiff.  *See Toys "R" Us*, 318 F.3d at 457.

In opposition, Yaminsky supplies a Certification attached to his Motion ("Yaminsky Certification," ECF No. 27-2), which attests that Yaminsky (1) is a resident of Spain who never resided in New Jersey, (2) does not own property in New Jersey, (3) does not have bank accounts in New Jersey, (4) never visited New Jersey during the course of his discussions with Schwartz, Avataa USA, or Ahead Engineering, (5) was never a member of Avataa USA, (6) was never CEO of Avataa USA nor did he hold another position with it, and (7) never entered into an agreement with Avataa USA.  (Yaminsky Certification ¶¶ 2–11.)  Defendant has thus contradicted Plaintiff's factual allegations.

Plaintiff responds via a certification from Schwartz.  ("Schwartz Certification," ECF No. 29-1.).  Schwartz attests that Yaminsky had numerous conversations and discussions on corporate structure in New Jersey, and that Yaminsky owns other property and assets in New Jersey related to his 38 percent ownership interest in Avataa USA.  (*See generally* Schwartz Certification.) Additionally, Schwartz provides the Court with various exhibits containing screenshots indicating that there was an implicit agreement between Schwartz and Yaminsky, that Yaminsky had ownership in Avataa USA, that Yaminsky had an account with TD Bank, that Yaminsky was listed as CEO on the Avataa USA website, and that Yaminsky, Schwartz, and Wilkinson often had calls with each other.  (*See* Exhibits to Schwartz Certification, ECF No. 29-2.)  Thus, although Plaintiff responded with actual proofs, *Patterson by Patterson*, 893 F.2d at 603, the Court is not fully satisfied that it has personal jurisdiction over Yaminsky because there are, at the very least,

inconsistencies in the parties' factual assertions with respect to Yaminsky's connections to this forum.[5]

With respect to HQ Avataa S.L., Plaintiff alleges that HQ Avataa S.L. (1) was formerly known as Start Innovations, S.L., (2) conducted business in New Jersey closely with Ahead Engineering and Avataa USA, (3) engaged in numerous discussions with New Jersey residents concerning the development of a software product for Ahead Engineering and Avataa USA, and (4) allegedly conspired to convert trade secrets owned by Ahead Engineering and Avataa USA, who both conduct business in New Jersey.  (Compl. ¶ 14.)  In response, Defendants argue that these allegations lack the necessary detail for the Court to conclude that it has jurisdiction over HQ Avataa S.L.  (Moving Br. II, at 13.)  Additionally, Defendants argue that HQ Avataa S.L. is based in Spain, and all of Plaintiff's interactions with it occurred in Barcelona, Spain.  (*Id.* at 14 (citing Compl. ¶ 83)).  Plaintiff has not responded with actual proofs regarding HQ Avataa S.L.

In light of the competing attestations regarding Defendants' connections to New Jersey, the Court cannot resolve the issue of personal jurisdiction as to Yaminsky and HQ Avataa S.L. on this record.  Under the circumstances, the proper recourse is to proceed to a hearing.  *See Miller Yacht Sales, Inc.*, 384 F.3d at 97.  Plaintiff has requested, in the alternative, that it be granted jurisdictional discovery.  (Opp'n Br. II, at 16.)  The Court agrees, and finds that, prior to scheduling a hearing, jurisdictional discovery—limited to these issues—is warranted to develop the record for the benefit of the parties as well as the Court.  *See Toys "R" Us*, 318 F.3d at 456 ("Although the

---

[5] Plaintiff separately argues that the Court has jurisdiction over Yaminsky under the *Calder* effects test.  (Opp'n Br. II, at 11.)  However, the Court is not fully satisfied that it has personal jurisdiction over Yaminsky under that test either.  *See Calder v. Jones*, 465 U.S. 783 (1984) (setting forth three factors that allow a plaintiff to demonstrate the existence of personal jurisdiction: (1) the defendant committed an intentional tort; (2) the plaintiff felt the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by the plaintiff as a result of that tort; and (3) the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity).  Notably, Yaminsky is alleged to have committed an intentional tort, where the brunt of that harm is felt in New Jersey.  But it is not clear on this record that he specifically aimed his conduct at or targeted New Jersey.  Accordingly, on this record, the Court finds that the *Calder* effects test is not satisfied.

plaintiff bears the burden of demonstrating facts that support personal jurisdiction, courts are to assist the plaintiff by allowing jurisdictional discovery unless the plaintiff's claim is 'clearly frivolous.'") (citing *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361 (3d Cir. 2002)). "If a plaintiff presents factual allegations that suggest 'with reasonable particularity' the possible existence of the requisite contacts between [the party] and the forum state, . . . the plaintiff's right to conduct jurisdictional discovery should be sustained." *Id.* (quoting *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992)).

The parties' jurisdictional discovery should include (but not be limited to) further detail as to Yaminsky's disputed role as CEO of Avataa USA, his ownership of property in New Jersey related to his ownership with Avataa USA, the business meetings between the parties, and who initiated the communications between the parties. The parties shall be mindful that a plaintiff cannot establish personal jurisdiction over a defendant simply because the plaintiff is a New Jersey-based company. *See Ford Motor Co.*, 592 U.S. at 359 (emphasizing that the inquiry is whether the *defendant* took "some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State"). Likewise, a court may not exercise personal jurisdiction over a non-resident defendant simply because the non-resident defendant has contracted to do business with a resident plaintiff. *Vetrotex CertainTeed Corp. v. Consolidated Fiber Glass Prods. Co.*, 75 F.3d 147, 152–53 (3d Cir. 1996); *see Grand Entm't Grp., Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir. 1993) ("[A] contract alone does not 'automatically establish sufficient minimum contacts in the other party's home forum'") (quoting *Burger King*, 471 U.S. at 478); *Mellon Bank (East) v. DiVeronica Bros., Inc.*, 983 F.2d 551, 557 (3d Cir. 1993) ("Contracting with a resident of the forum state does not alone justify the exercise of personal jurisdiction over a non-resident defendant").

Accordingly, the Court will order the parties to conduct jurisdictional discovery.[6]  As detailed in the accompanying Order, the parties will be given sixty (60) days in which to conduct that discovery.

>    2.    Failure to State a Claim

Avataa UAE does not dispute the Court's personal jurisdiction; therefore, the Court will proceed with whether the Complaint states a claim against Avataa UAE.  In the Yaminsky Motion, Avataa UAE argues that Plaintiff fails to state a claim for (1) misappropriation of a trade secret under the DTSA and NJTSA, (2) conspiracy, and (3) breach of contract.  (Moving Br. II, at 2.) The Court will first address Plaintiff's DTSA claim.

Under the DTSA, a plaintiff is required to demonstrate (1) the existence of a trade secret, defined generally as information with independent economic value that the owner has taken reasonable measures to keep secret, 18 U.S.C. § 1839(3); (2) that the trade secret "is related to a product or service used in, or intended for use in, interstate or foreign commerce," *id.* § 1836(b)(1); and (3) the misappropriation of that trade secret, defined broadly as the knowing improper acquisition, or use or disclosure of the secret, *id.* § 1839(5).  *See id.* § 1836(b)(1), (3) (recognizing a federal private cause of action for trade secret misappropriation and establishing remedies); *Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 905 (3d Cir. 2021).

To plead the existence of a trade secret in a misappropriation claim brought under the DTSA, a plaintiff must sufficiently identify the information it claims as a trade secret and allege facts supporting the assertion that the information is indeed protectable as such.  *See* 18 U.S.C. §§ 1836(b), 1839(3).  In determining whether allegations about the identified information plausibly support its having protected status as a trade secret, courts consider whether the owner

---

[6] Given that personal jurisdiction has not been resolved as to Yaminsky and HQ Avataa S.L., the Court does not reach their other arguments on the Motion to Dismiss.

of the information "has taken reasonable measures to keep . . . [it] secret" and whether the "information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information." *Id.* § 1839(3) (alteration in original); *Oakwood Lab'ys*, 999 F.3d at 905; *OWAL, Inc. v. Caregility Corp.*, Civ. No. 21-13407, 2022 WL 890182, at *7 (D.N.J. Mar. 25, 2022).

It is well-settled law that when a plaintiff brings a civil conspiracy or aiding and abetting claim, as is the case here, he or she must allege a viable underlying tort. *See McLean v. Sumitra*, Civ. No. 23-22842, 2025 WL 457829, at *11 (D.N.J. Feb. 11, 2025); *Dill v. Yellin*, 725 F. Supp. 3d 471, 484 (D.N.J. 2024); *Hildebrandt v. siParadigm LLC*, Civ. No. 23-21835, 2024 WL 5252468, at *8 (D.N.J. Dec. 30, 2024) ("a claim for aiding and abetting [] requires proof of [an] underlying tort"); *Brown ex rel. Est. of Brown v. Philip Morris Inc.*, 228 F. Supp. 2d 506, 517 n.10 (D.N.J. 2002) ("Civil conspiracy is not an independent cause of action, and conspiracy liability depends on the presence of an underlying finding of tort liability."). Here, Plaintiff's tortious allegations arise from the DTSA and NJTSA. Therefore, to state a claim for civil aiding and abetting and conspiracy (Counts Three and Four), Plaintiff must adequately allege a violation of the DTSA or NJTSA.[7]

Here, for the reasons set forth below, the Court concludes that Plaintiff has not adequately alleged a claim under the DTSA.

---

[7] For reasons to be explained later, the Court will decline to exercise supplemental jurisdiction over Plaintiff's state law claims including its NJTSA claim. However, had the Court exercised jurisdiction, courts in this circuit have noted that the analysis of a DTSA claim also applies to claims under the NJTSA given that both statutes are substantially similar as a whole and include identical or almost identical definitions for each statutory term at issue. *Oakwood Lab'ys*, 999 F.3d at 905 n.11; *see also Austar Int'l Ltd. v. AustarPharma LLC*, 425 F. Supp. 3d 336, 355–57 (D.N.J. 2019) (consolidating the analysis of the DTSA and NJTSA claims).

First, the Court considers whether the Complaint alleges Avataa USA's trade secrets "with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade." *Oakwood Lab'ys*, 999 F.3d at 906; *Dow Chem. Canada, Inc. v. HRD Corp.*, 909 F. Supp. 2d 340, 346 (D. Del. 2012). The Complaint identifies trade secrets in a list of specific categories to permit the defendant to ascertain at least the boundaries within which the secret lies. (*See* Compl. ¶¶ 90, 98 ("[The] trade secrets include [Avataa USA's] workflow module, [Avataa USA's] database structure, [Avataa USA's] 3D Modeler, [Avataa USA's] field operations software application, the specification for [Avataa USA's] product and [Avataa USA's] project plan."). *See also OWAL*, 2022 WL 890182, at *7 (explaining that sufficient identification of the trade secrets does not require scientific specificity at the complaint stage; rather, lists of categories of data, not used in every company, can be sufficient). The Court is also satisfied based on a full and liberal reading of the Complaint that Plaintiff has alleged ownership of those trade secrets. (*See, e.g.*, Compl. ¶¶ 39, 46, 90.) Therefore, the Court finds that the Complaint alleges both the existence of a trade secret and Plaintiff's ownership of that trade secret. *See Rodgers Grp., LLC v. Lewis*, Civ. No. 22-482, 2022 WL 4095785, at *4 (D.N.J. Sept. 7, 2022) (explaining that the standard is one of notice, not of detail, and that a plaintiff is not required to "articulate each individual trade secret by name and description" at the pleading stage); *Arro-Mark Co. LLC. v. Warren*, Civ. No 22-6663, 2024 WL 4053027, at *6 (D.N.J. Sept. 5, 2024) (same).

The Complaint, however, does not allege that Plaintiff took reasonable measures to keep the secrets safe. 18 U.S.C. § 1839(3); *Oakwood Lab'ys*, 999 F.3d at 905. Plaintiff cites various allegations in the Complaint that are inconsistent with Plaintiff taking the required measures. Notably, Plaintiff alleges that Ahead Engineering gave Start access to the proprietary GAS

software, templates, sample output from the software, and other business plans, (Compl. ¶ 30), that Ahead Engineering gave private confidential information to Avataa USA after it came into existence (*id.* ¶ 40), and that private information was exchanged with various people and entities in private meetings and at the Barcelona trade shows (*id.* ¶¶ 56, 64, 65, 66, 83). Additionally, the Complaint alleges that Ahead Engineering refused to sign a consulting agreement with Verdant and Wilkinson which would have required Verdant to enter into a non-disclosure agreement. (*Id.* ¶ 27.)

In its opposition, Plaintiff argues that because the trade secrets belong to Avataa USA, it does not matter what Ahead Engineering did to protect the trade secrets. (Opp'n Br. II, at 20.) Plaintiff adds that it did not share its trade secrets with third parties other than those who had a duty to keep the secrets confidential. (*Id.* at 21.) However, the Complaint does not provide an adequate factual foundation that HQ Avataa S.L., Yaminsky, Avataa UAE, and others owed a fiduciary duty to Avataa USA to keep the information secret. By way of example, there are no allegations that Avataa USA (1) required its employees or fiduciaries to sign non-disclosure and confidentiality agreements, (2) implemented a company policy forbidding employees from storing company information on their computers, (3) imposed a duty to return company information upon separation from Avataa USA, or (4) utilized a notice system to remind employees of their obligations to Plaintiff when employees accessed material from its network. *Peoplestrategy, Inc. v. Lively Emp. Servs., Inc.*, Civ. No. 20-2640, 2020 WL 7869214, at *4 (D.N.J. Aug. 28, 2020). Although the Complaint alleges that there was a notice in all email communications between the parties that stated the information provided in the emails was confidential, (Compl. ¶ 31), this broad email notice does not suffice to allege that Plaintiff took reasonable measures to keep its trade secrets confidential.

A separate and entirely independent reason to dismiss the DTSA claim against Avataa UAE is that the Complaint fails to allege that the purported trade secrets have independent economic value.  Plaintiff maintains that the Complaint meets this pleading requirement.  (Opp'n Br. II, at 23 (citing Compl. ¶¶ 38, 39, 56, 64, 66, 88)).  However, the Complaint refers to the GAS system as having economic value, not the trade secrets purportedly underlying GAS.  For example, the Complaint does not allege how much in revenue Avataa USA generated from the trade secrets. *See Elmagin Cap., LLC v. Chen*, 555 F. Supp. 3d 170, 180 (E.D. Pa. 2021) (revenue is one way to assess economic value of a trade secret).  Likewise, the allegations related to the Barcelona trade show (*id.* ¶¶ 56, 64), do not illustrate that the trade secrets themselves have independent economic value.  Lastly, the allegation that "Yaminsky, Skripnik, Avataa UAE, Start Innovations[,] HQ Avataa S.L.[,] and Avataa UAE were provided with confidential access to [Ahead Engineering's] trade secrets by [Avataa USA] so as to develop the scalable GAS product," (*id.* ¶ 88), does not articulate how the trade secrets have independent economic value.[8]

Accordingly, the Court finds that the Complaint fails to adequately plead a *prima facie* violation of the DTSA against Avataa UAE.  Without a plausible violation of the DTSA as an underlying tort, the corresponding conspiracy claim against Avataa UAE fails as well.  *See Dist. 1199P Health & Welfare Plan v. Janssen, L.P.*, 784 F. Supp. 2d 508, 533 (D.N.J. 2011) (dismissing a conspiracy claim because the plaintiffs failed to allege an underlying tort).  As a result, the Court will **DISMISS WITHOUT PREJUDICE** Plaintiff's DTSA and conspiracy claims against Avataa UAE (Counts One and Four).

---

[8] Even if Plaintiff properly alleged that it owned the trade secrets, took steps to keep it safe, and the trade secrets had independent economic value, the Court is not fully satisfied that the Complaint adequately alleges that there was misappropriation of that secret.  *ParPharm., Inc. v. QuVa Pharma, Inc.*, 764 F. App'x 273, 278 (3d Cir. 2019).

3.    <u>Supplemental Jurisdiction Over the NJTSA and Breach of Contract Claims</u>

Count Two of the Complaint is a misappropriation of trade secrets claim brought under the NJTSA against Yaminsky, Avataa UAE, Start Innovations, and HQ Avataa S.L.  (*See generally* Compl.)  Count Five of the Complaint alleges a breach of contract claim against Yaminsky, HQ Avataa S.L. and Avataa UAE.  (*Id.*)  The Court has supplemental jurisdiction over Plaintiff's state law claims, which include the NJTSA and breach of contract claims.  *See* 28 U.S.C. § 1367(a).

The Complaint asserts that the Court also has diversity jurisdiction based on the parties' diverse citizenship and the value of the parties' dispute.  However, the Complaint fails to disclose the citizenship of all of the *members* of the LLC parties.  "[T]he citizenship of an LLC is determined by the citizenship of its members."  *Zambelli Fireworks Mfg. Co. v. Wood*, 592 F.3d 412, 420 (3d Cir. 2010) (citation omitted).  "And as with partnerships, where an LLC has, as one of its members, another LLC, the citizenship of unincorporated associations must be traced through however many layers of partners or members there may be to determine the citizenship of the LLC."  *Id.* (citation omitted).  Here, the Court therefore lacks the required information to assess its jurisdiction under 28 U.S.C. § 1332.

Under 28 U.S.C. § 1367(c), a district court may decline to exercise supplemental jurisdiction over state law claims under certain circumstances.  Here, the Court will decline to exercise subject matter jurisdiction over Plaintiff's state law claims and **DISMISS WITHOUT PREJUDICE** those claims (Counts Two and Five).  *See* 28 U.S.C. § 1367(c); *N.J. Coed Sports LLC v. ISP Sports, LLC*, Civ. No. 22-6969, 2023 WL 3993772, at *5 (D.N.J. June 14, 2023) (declining to exercise jurisdiction over state law claims after dismissing the plaintiff's DTSA claim).

In summary, for the foregoing reasons, the Court will order Avataa USA, Yaminsky, and HQ Avataa S.L. to proceed to jurisdictional discovery.  The Court will **DISMISS WITHOUT**

**PREJUDICE** Counts One and Four against Avataa UAE.  The Court will decline to exercise jurisdiction over Counts Two and Five, and also **DISMISS WITHOUT PREJUDICE** those claims.

### B.    Claims Against Verdant and Wilkinson

That leaves the claims against Verdant and Wilkinson.  In the Verdant Motion, Verdant and Wilkinson argue that Plaintiff fails to state a claim against them for aiding and abetting and conspiracy (Counts Three and Four, respectively) because it cannot allege an underlying tort violation under the DTSA or NJTSA.  (Moving Br. I, at 2, 12.)  Verdant and Wilkinson also argue that Plaintiff fails to plead non-conclusory allegations with respect to the aiding and abetting and conspiracy claims.  (*Id.* at 18–19.)  Lastly, Wilkinson argues that Plaintiff fails to plead conspiracy against him in light of the intracorporate conspiracy doctrine and the fact that there are no allegations that Wilkinson acted outside the scope of his employment with Verdant.  (*Id.* at 20–21.)[9]

In opposition, Plaintiff again maintains that it has plausibly alleged a claim under the DTSA and NJTSA and that it has adequately pled a claim for conspiracy and aiding and abetting against Verdant and Wilkinson.  (Opp'n Br. I., at 16–17 (citing Compl. ¶¶ 34, 35, 65, 66, 70, 81, 106, 111)).  Plaintiff further argues that Wilkinson's intracorporate conspiracy doctrine argument is

---

[9] In the alternative, Verdant and Wilkinson argue that the Court should order Plaintiff to provide a more definite statement of facts pursuant to Rule 12(e).  (Moving Br. I., at 22.)  In response to the Rule 12(e) argument, Plaintiff argues that the Complaint contains reference to specific parties and their actions and Verdant and Wilkinson have failed to make a proper showing of relief under Rule 12(e).  (Opp'n Br. I, at 19–20.)  The Court agrees with Plaintiff and will deny Verdant's and Wilkinson's request under Rule 12(e) for two reasons.  First, Rule 12(e) provides that "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response," Fed. R. Civ. P. 12(e), and Verdant and Wilkinson have not sufficiently shown that the pleading is so vague or ambiguous that they cannot respond.  *See MK Strategies, LLC v. Ann Taylor Stores Corp.*, 567 F.Supp.2d 729, 736–37 (D.N.J. 2008).  Second, given that the Court will grant the Verdant Motion as to Counts Three and Four, the Court finds its alternative request under Rule 12(e) moot.

inapplicable in light of the fact that the conspiracy was formed in the context of Wilkinson's conduct as an agent for the other defendants. (*Id.* at 17 (citing Compl. ¶¶ 65, 66)).[10]

For the reasons set forth above, the Court finds that the Complaint also fails to allege an underlying tort violation under the DTSA as to Verdant or Wilkinson. Thus, its claims for aiding and abetting and conspiracy against Verdant or Wilkinson fail. *See Dist. 1199P Health & Welfare Plan*, 784 F. Supp. 2d at 533. The Court does not reach Verdant or Wilkinson's remaining arguments. Accordingly, the Verdant Motion will be **GRANTED**. The claims against Verdant and Wilkinson will be **DISMISSED WITHOUT PREJUDICE**.

## V.    <u>CONCLUSION</u>

For the reasons stated above, the Court will **GRANT-IN-PART** and **DENY-IN-PART** the Yaminsky Motion. (ECF No. 27.) The Court will **DENY** the Motion as to Yaminsky and HQ Avataa S.L. **WITHOUT PREJUDICE** to their right to renew their Motion. The Court will order Avataa USA, Yaminsky, and HQ Avataa S.L. to engage in jurisdictional discovery on the issue of whether the Court has personal jurisdiction over Yaminsky and HQ Avataa S.L. The parties will have 60 days to complete this discovery. They will be instructed to meet and confer and submit a joint letter proposing a schedule for supplemental briefing and proposed dates for a hearing. The Court will **GRANT** the Motion as to Avataa UAE, and Counts One and Four of the Complaint against Avataa UAE will be **DISMISSED WITHOUT PREJUDICE**. The Court will decline to exercise jurisdiction over Plaintiff's NJTSA and breach of contract claims against Avataa UAE (Counts Two and Five, respectively), and will also **DISMISS WITHOUT PREJUDICE** those claims.

---

[10] In a reply brief, Verdant and Wilkinson argue that Schwartz—the founder and CEO of Ahead Engineering—transferred Ahead Engineering's purported trade secret to Avataa USA, and therefore, Avataa USA is not the owner of the trade secret. (Reply Br. I., at 2.) Verdant and Wilkinson further argue that Plaintiff conflates a non-protectable product with its claimed trade secret, and that the Complaint does not state what the trade secrets are. (*Id.* at 4–5.)

The Court will also **GRANT** the Verdant Motion.  (ECF No. 12.)  Counts Three and Four against Verdant and Wilkinson will be **DISMISSED WITHOUT PREJUDICE**.

Plaintiff will be given **thirty (30) days** of the close of jurisdictional discovery to file an amended complaint.

Finally, the Clerk of Court will be instructed to **ADMINISTRATIVELY TERMINATE** this case pending further submissions from the parties.  An appropriate Order will follow.


Date: March 24, 2025


s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**