**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| **AVATAA USA, LLC.**,<br><br>Plaintiff,<br><br>v.<br><br>**FEODOR YAMINSKY, *et al.***,<br><br>Defendants. | Civil Action No. 24-6314 (ZNQ) (TJB)<br><br>**OPINION** |

**QURAISHI, District Judge**

**THIS MATTER** comes before the Court upon two motions to dismiss the Amended Complaint ("Am. Compl.," ECF No. 49): (1) a motion filed by Defendants Verdant Advisers LLC ("Verdant") and David Wilkinson ("Wilkinson"), the managing director of Verdant ("the Verdant Motion," ECF No. 53); and (2) a motion filed by Defendants Feodor Yaminsky ("Yaminsky"), HQ Avataa S.L., and Avataa LLC (UAE) (the "Yaminsky Motion," ECF No. 55).[1] Defendants independently submitted moving briefs in support of the Motions. ("Verdant Moving Br.," ECF No. 53-1; "Yaminsky Moving Br.," ECF No. 55-1.) Plaintiff Avataa USA, LLC ("Avataa USA" or "Plaintiff") filed briefs in opposition to both motions. ("Opp'n Br. I.," ECF No. 57; "Opp'n Br. II.," ECF No. 58.) Defendants submitted replies. ("Verdant Reply Br.," ECF No. 65; "Yaminsky Reply Br.," ECF No. 66.) The Court has carefully considered the parties' submissions and decides the motions without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil

[1] Defendants Dmitry Skripnik ("Skripnik"), the Chief Operations Officer of Avataa USA, and Start Innovations, S.L., now known as HQ Avataa S.L., are named as defendants. Skripnik is not represented by counsel and has not filed a motion to dismiss or otherwise joined the Verdant or Yaminsky motions.

Rule 78.1.[2] For the reasons set forth below, the Court will **GRANT** Defendants' motions and dismiss the Amended Complaint without prejudice.

## I. <u>BACKGROUND AND PROCEDURAL HISTORY</u>

### A. FACTUAL BACKGROUND[3]

The factual background is complicated given that there are several individuals and entities involved in this lawsuit. The history begins with nonparty Chad Schwartz, P.E. ("Schwartz"), who is a founding member and Chief Executive Officer ("CEO") of Ahead Engineering, LLC ("Ahead Engineering"), a full-service telecommunications engineering firm, that would later merge with Defendant Start Innovations, S.L, and then become Plaintiff Avataa USA. (Am. Compl. ¶¶ 17, 19.) As of the date of the Complaint, Schwartz owns thirty percent of Avataa USA. (*Id.*) Nonparties Kyle McGinley ("McGinley"), Robert Pietrocola ("Pietrocola"), and Ryan Waldron ("Waldron") are members of Ahead Engineering, each owning an eight percent membership interest in Avataa USA. (*Id.* ¶ 18.) Together, Schwartz, McGinley, Pietrocola, and Waldron own a majority interest in Avataa USA. (*Id.* ¶ 21.) Prior to the existence of Avataa USA, Ahead Engineering developed a project management software product for the cellphone industry, known as "GAS," designed to provide workflow, engineering, and site work field data collection function for small cell site networks. (*Id.* ¶ 20.)

Defendants Verdant and Wilkinson provide merger and acquisition advisory services and consulting to software technology and wireless communication entities. (*Id.* ¶ 22.) In December 2020, Schwartz and Wilkinson developed a business relationship where Wilkinson introduced Ahead Engineering to "strategic parties" who could assist them in "scaling" GAS. (*Id.* ¶ 23.) As

---

[2] Hereinafter, all references to "Rule" or "Rules" refer to the Federal Rules of Civil Procedure unless otherwise noted.
[3] For the purposes of considering the Motions, the Court accepts all factual allegations in the Amended Complaint as true. *See Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008).

a result, Wilkinson introduced Ahead Engineering to Defendant Yaminsky, the owner of Start Innovations, S.L. ("Start"), because Start purportedly had the expertise to develop GAS into a commercial and valuable software platform. (*Id.* ¶ 24.) In exchange for the introduction and promised future consulting, Verdant and Wilkinson requested that Verdant receive four percent "phantom equity shares" in Ahead Engineering. (*Id.* 25.) Wilkinson provided Schwartz with a consulting agreement in July 2021 that Ahead Engineering and its partners did not sign. (*Id.*) That agreement stated that the information provided by Ahead Engineering to Verdant will be governed by a non-disclosure agreement; Wilkinson and Verdant were supposed to draft the non-disclosure agreement which never came to fruition. (*Id.* ¶ 26.)

At a later time, Wilkinson and Verdant assured Schwartz and Ahead Engineering that "due to Verdant's existing relationship with Start and Yaminsky, they could be trusted with [Ahead Engineering's] confidential and proprietary information." (*Id.* ¶ 27.) Relying on these representations, in January 2021, Ahead Engineering provided Verdant and Start with "certain information from which it could evaluate [Ahead Engineering's] existing platform." (*Id.* ¶ 28.) Around that same time, Ahead Engineering issued its first purchase order to Start whereby it would pay Start $20,000 for services, including software production and development. (*Id.* ¶ 29.) In connection with this purchase order, Ahead Engineering gave Start access to the proprietary software, templates, sample output from the software, and other business plans. (*Id.*) Ahead Engineering's members and employees are required to execute nondisclosure agreements to obtain limited access, based on their role within the company, to need-to-know information on the company's secure servers. (*Id.* ¶ 30.) Ahead Engineering, Start, and Verdant agreed that Ahead Engineering would own the product being developed under the purchase order. (*Id.* ¶ 33.)

Start completed the work in March 2021. However, Start, along with Yaminsky, did not produce the architecture called for in the purchase order until October 2022 or the project plan until November 2022. (*Id.* ¶ 35.) In fact, as alleged, "an entirely new architecture was required because the Start platform was later found to be inadequate and a complete replacement of the Start platform was required." (*Id.*) It was at this time that Ahead Engineering realized that its product — which was to be developed and promoted by Wilkinson and Start — would not come to fruition. (*Id.* ¶ 36.) Nevertheless, Ahead Engineering and Start entered into a subsequent phase of the purchase order — Phase 1.1. (*Id.* ¶ 38.)

As part of this phase, the parties agreed to form a jointly owned company headquartered in New Jersey; that company was originally named "Ahead Start, LLC," combining Ahead Engineering and Start Innovations, S.L., but was later changed to Avataa USA, the Plaintiff in this action. (*Id.* ¶ 41.) After the startup of Avataa USA, Ahead Engineering provided it with all of its confidential information and made multiple monetary contributions to the business. (*Id.* ¶ 47.) Yaminsky and Skripnik assigned a Lead Developer, Radinsky, to document the technical requirements and communicate with the other developers on the GAS software development team—upon Yaminsky's direction, Radinsky incorporated Ahead Engineering's confidential information into the GAS Platform specification, marked those specifications as confidential, and limited access to the GAS specification to Start employees who had signed nondisclosure agreements. (*Id.* ¶ 49.) "Specifications were stored in a controlled access, invite only, Google drive, while the GAS Platform source code was stored on the password protected and access controlled development platform GitLab." (*Id.*)

Plaintiff further alleges that after the creation of Avataa USA, Schwartz, Yaminsky, and various members from Ahead Engineering met numerous times about the GAS workflow module.

(Id. ¶ 50.) These recurring meeting were divided into two categories: “(a) ‘GAS Software Discussion – Future’ specifically to discuss the development of the new fully-featured software platform and (b) ‘GAS Software Discussion – Existing and Maintenance’ specifically to discuss any operational issues arising with the limited set of features utilized by AE, operating atop the Start Platform, while the fully featured GAS Platform was under development.” (*Id.*) The Ahead Engineering members requesting certain functions — all of which were included in the GAS Platform specification and marked “confidential” by Radinsky at Yaminsky’s direction — to be added to the software in light of security issues. (*Id.* ¶ 53.) To satisfy the Ahead Engineering members’ requests, Yaminsky and Start needed to program a workaround to the platform, which they promised to do yet never did. (*Id.*)

In January 2022, Wilkinson informed Ahead Engineering that Yaminsky had formed new companies, Defendants HQ Avataa S.L. and Avataa LLC (UAE), to replace Start as the developer, and Avataa LLC (UAE) f/k/a Avatar ME LLC as his billing portal to minimize Spanish taxes, of the GAS product. (*Id.* ¶ 55.) Thereafter, Wilkinson requested that Ahead Engineering start paying a monthly amount of $25,000 for ten full-time developers rather than on a task-by-task basis. (*Id.*) Ahead Engineering agreed to that request as an accommodation to Yaminsky and Wilkinson. (*Id.*) It was later discovered that “H.Q. Avataa SL was not actually a new company, but was instead the renaming of Start Innovations S.L. . . . [and] that the Defendants had assigned only 5 full-time developers, rather than the 10 that [Ahead Engineering] was paying for.” (*Id.*) To that end, Yaminsky had already assured the Ahead Engineering members that the developers in his companies had signed nondisclosure agreements and confidentiality agreements. (*Id.*)

In February 2022, despite these ongoing issues, the parties presented GAS at the Mobile World Congress trade show in Barcelona, Spain. (*Id.* ¶ 57.) Wilkinson thereafter began to set up

calls with individuals in the communications industry for demonstrations of GAS. (*Id.* ¶ 59.) In September 2022, Yaminsky forwarded to Schwartz a draft business plan—drafted by Wilkinson—which contained a provision where Ahead Engineering would transfer all of its intellectual property to Avataa LLC (UAE). (*Id.* ¶ 60.) Ahead Engineering refused to agree to the draft business plan. (*Id.*) In November 2022, Yaminsky and Wilkinson advised Ahead Engineering that it needed more time to create a commercial platform, which "could be reduced to 18 months, if [Ahead Engineering] doubled their rate of investment in [Avataa USA]." (*Id.* ¶ 61.) Ahead Engineering voiced concerns about further investment in the platform to Wilkinson, and the parties considered outsourcing sub-components of the GAS Platform, the planned Unity development; but after Yaminsky's pleadings and reassurances, the parties ultimately agreed that Yaminsky an HQ Avataa S.l. and Avataa LLC (UAE) would continue with the Unity development for the under-development GAS software. (*Id.* ¶¶ 63–64.)

On February 28, 2023, Schwartz met Wilkinson at the 2023 Mobile World Congress trade show in Barcelona. (*Id.* ¶ 66.) Due to conflicts of interest, Wilkinson informed Schwartz that he should confer directly with Yaminsky to settle outstanding issues with the software; however, as alleged, "Yaminsky [was] evasive." (*Id.*) Plaintiff alleges that "Wilkinson and Yaminsky excluded Schwartz from every prescheduled meeting . . . while presumably [continuing] to market GAS and its derivatives to the industry." (*Id.* ¶ 67.) Thus, at all relevant times, "Yaminsky misled Schwartz and the [Ahead Engineering] Partners as to the extent to which [GAS] had been developed and expressly denied that there was a project plan or specification for the [Avataa USA] product under development so as to hide from [Ahead Engineering] the fact that [the] product was built on [Ahead Engineering] intellectual property." (*Id.* ¶ 68.)

To make matters worse, in March 2023, Schwartz learned that Yaminsky's company, HQ Avataa S.L., was having Radinsky develop a product based on Ahead Engineering's original GAS project platform and the confidential information Ahead Engineering provided to Yaminsky. (*Id.* ¶¶ 69–71.) Later that month, Plaintiff alleges that "Yaminsky finally admitted that there were actually two versions of the [GAS] software, the original version based atop the Start Platform, which he acknowledged was not fit for multi-customer, multi-use-case purposes, and a new and improved version which is suitable for scaled applications." (*Id.* ¶ 74.) Yaminsky developed this "improved" software without Ahead Engineering's or Avataa USA's consent, despite using its intellectual property. (*Id.*)

In June 2023, as a result of all the issues between the parties, Wilkinson asked to withdraw Verdant's interest in Avataa USA. (*Id.* ¶ 80.) As of the date of the Amended Complaint, "Yaminsky claims that HQ Avataa S.L and Avataa LLC (UAE) now own [Avataa USA]'s intellectual property and the work product of the services paid for by the [Ahead Engineering] members," (*id.* ¶ 81), and Yaminsky refuses to relinquish control of all work product developed by Avataa USA and paid for by Ahead Engineering, (*id.* ¶ 82.) Moreover, "Yaminsky, HQ Avataa S.L., Avataa LLC (UAE), Wilkinson[,] and Verdant wrongfully claim that the work product bought and paid for by [Avataa USA] and [Ahead Engineering] belongs to HQ Avataa S.L. and Avataa LLC (UAE)." (*Id.*)

Plaintiff alleges that Yaminsky, HQ Avataa S.L., and Avataa LLC (UAE) "were caught red-handed." (*Id.* ¶ 84.) At the GSMA Mobile World Congress convention in Barcelona, Plaintiff alleges that: (i) "[a]t HQ Avataa S.L.'s booth, Yaminsky was demonstrating a product which clearly incorporates specific identifiable features of the GAS product that AE had paid Start Innovations, HQ Avataa S.L. and Avataa LLC (UAE) to develop, which Radinsky confirmed were

reused from AUSA's platform, built using from AE's proprietary trade secrets, and now marketed under the same name, 'Avataa'" (*id.*); (ii) employees from both of Yaminsky's companies "confirmed the existence of numerous [Avataa USA] specific modules and functionalities which were not yet on display" (*id.* ¶ 85); and (iii) TecTwin GmbH ("TecTwin"), a branch of the Avataa family owned in part by Yaminsky, had a portfolio that included a deployment automation system that in actuality is the GAS product developed by Avataa USA (*id.* ¶¶ 87–91).

### B. PROCEDURAL HISTORY

Plaintiff filed the original Complaint on May 21, 2024. (ECF No. 1.) Defendants filed motions to dismiss the original Complaint, which the Court granted in part and denied in part. Specifically, the Court (i) granted Yaminsky's motion as to Avataa LLC (UAE) with respect to Counts One and Four, (ii) denied Yaminsky's motion as to Yaminsky and HQ Avataa S.L., (iii) ordered that Avataa USA, Yaminsky, and HQ Avataa S.L. proceed to jurisdictional discovery (limited to the question of whether the Court has personal jurisdiction over Yaminsky and HQ Avataa S.L.), (iv) declined to exercise jurisdiction over Counts Two and Five, and (v) granted Verdant's motion as to Counts Three and Four. Plaintiff thereafter moved for leave to file an amended complaint (ECF No. 36) which the Court granted (ECF. No. 48.) Plaintiff filed the Amended Complaint, which asserts six claims: Count One alleges misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836, *et seq.*, against Yaminsky, Skripnik, Start, HQ Avataa S.L. and Avataa LLC (UAE); Count Two alleges misappropriation of trade secrets in violation of the New Jersey Trade Secrets Act ("NJTSA"), N.J. Stat. Ann. § 56.16, *et seq.*, against Yaminsky, Skripnik, Start, HQ Avataa S.L. and Avataa LLC (UAE); Count Three is a breach of fiduciary duty and duty of loyalty claim against Yaminsky and Skripnik; Count Four is an aiding and abetting claim for the misappropriation of trade secrets

against Verdant and Wilkinson; Count Five alleges conspiracy against Yaminsky, Skripnik, Avataa LLC (UAE), Start, HQ Avataa S.L., Verdant, and Wilkinson; and Count Six alleges breach of contract against Yaminsky, Skripnik, Avataa LLC (UAE), Start, and HQ Avataa S.L.

Defendants Verdant and Wilkinson filed a Motion to Dismiss seeking dismissal of Counts Four and Five of the Amended Complaint—the only claims against them. (ECF No. 53.) Similarly, Defendants Yaminsky, HQ Avataa S.L., and Avataa LLC (UAE) filed a Motion to Dismiss seeking dismissal of all counts except for Count Four—aiding and abetting, which does not name them. (ECF No. 55.) Aside from seeking dismissal of these counts for failure to state a claim, Defendants also moved to dismiss the Amended Complaint for failure to join a necessary and indispensable party, TecTwin.

## II. SUBJECT MATTER JURISDICTION

The Court has subject matter jurisdiction over the DTSA claim pursuant to 28 U.S.C. § 1331. It has supplemental jurisdiction over the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## III. DISCUSSION

The crux of the additional allegations in the Amended Complaint is the implication of TecTwin, a company purportedly owned equally by Yaminsky and Meyer, in the misappropriation of Avataa USA's trade secrets, i.e., the GAS Platform. Substantively, the Amended Complaint is largely similar to the original one, save for the allegations about TecTwin. Avataa USA undoubtedly makes allegations about *Yaminsky's use of TecTwin to misappropriate* Avataa USA's trade secrets. While these allegations may ultimately bolster Avataa USA's claim for misappropriation, it also necessitates an assessment, as Defendants point out, of whether TecTwin needs to be joined in this lawsuit for it to proceed. The Court is persuaded that such joinder is

compulsory, as Avataa USA has seemingly staked out its misappropriation claim, either directly or indirectly, so as to implicate TecTwin.

Federal Rule of Civil Procedure 12(b)(7) requires dismissal of a complaint that fails to join a party pursuant to Rule 19. Courts employ a three-part analysis under Rule 19 to determine whether dismissal is warranted: courts consider first whether the party is "necessary," second whether joinder of the party is "feasible," and third whether the party is "indispensable." *Seashore Asphalt Corp. v. Pigliacelli*, Civ. No. 21-11920, 2022 WL 248102, at *2 (D.N.J. Jan. 27, 2022) (citing Fed. R. Civ. P. 19; *Janney Montgomery Scott, Inc. v. Shepard Niles, Inc.*, 11 F.3d 399, 404 (3d Cir. 1993)). Under Rule 19(a)(1),

> A person . . . shall be joined as a party in the action if (1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that the disposition of the action in the person's absence may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claimed interest.

Fed. R. Civ. P. 19(a). Courts treat clauses (1) and (2) disjunctively. *Janney*, 11 F.3d at 405.

Thus, the initial question is "whether complete relief can be accorded to the parties to the action in the absence of the unjoined party." *Janney*, 11 F.3d at 405 (citing Fed. R. Civ. P. 19(a)(1)). "[A]ny party whose absence results in any of the problems identified in either subsections (a)(1) or (a)(2) is a party whose joinder is compulsory if feasible. In other words, a holding that joinder is compulsory under Rule 19(a) is a necessary predicate to a district court's discretionary determination under Rule 19(b) that the case must be dismissed because joinder of the party is not feasible and the party is indispensable to the just resolution of the controversy." *Id.* The Court's inquiry under Rule 19(a)(1) "is limited to whether the district court can grant

***complete relief to the persons already parties to the action***. The effect a decision may have on the absent party is not material." *Id.*

Applying Rule 19(a)(1) to this case, the Court is satisfied that it cannot grant complete relief to Plaintiff in the absence of TecTwin. The Amended Complaint alleges that TecTwin, not Defendants, possesses a "deployment automation system, which is actually the GAS product developed by [Avataa USA]." (Am. Compl. ¶ 88.) The Amended Complaint further alleges that "Yaminsky continues to be an owner, either directly or indirectly, of TecTwin, and has misappropriated [Avataa USA's] GAS Platform, using TecTwin . . . as a front, signed agreements with VMWare and Ericsson based upon the stolen software, and now competes directly with [Avataa USA], contrary to the noncompete agreement and his duties to [Avataa USA]." (*Id.* ¶ 90.) Avataa USA specifically seeks, among other things: "a preliminary and permanent injunction prohibiting the Defendants from utilizing in any manner [Avataa USA's] trade secrets;" "a mandatory injunction compelling the Defendants to return all of [Avataa USA's] trade secrets in whatever form or format they exist;" and to compel "Defendants to account for all proceeds received due to their misappropriation and use of AUSA's software program[.]" (*Id.* ¶ 130.) It is evident from the Amended Complaint that complete relief could not be provided unless TecTwin is, at the very least, stripped of its "deployment automation system, which is actually the GAS product developed by [Avataa USA]" (*id.* ¶ 88.) and required to return Avataa USA's trade secrets, and to a lesser extent TecTwin would be implicated by an order compelling Defendants to account for all proceeds received due to their misappropriation of Avataa USA's software program. The Court is mindful that given the substance of the allegations implicating TecTwin and intertwining Yaminsky's misappropriation of Avataa USA's trade secrets and software program through TecTwin, an award of the complete relief sought in this lawsuit (notably including injunctive

relief) would wield little more weight than the paper on which it is written — Avataa USA cannot obtain complete relief in the absence of TecTwin from this lawsuit.

The Court also considers subsection (a)(2) of Rule 19. "Unlike subsection (a)(1), subsection (a)(2) requires a court to take into consideration the effect that resolution of the dispute among the parties before it *may have on an absent party*." *Janney*, 11 F.3d at 406 (emphasis added) (citing Fed. R. Civ. P. 19(a)(2)). This assessment is an inverse of the Court's previous discussion. Put simply, TecTwin is a necessary party because its own business interests — continuing to license its software, including the "development automation system," i.e., Avataa USA's purported GAS platform, and the proceeds received in connection with that software — are implicated by the outcome of this lawsuit. The Amended Complaint alleges that Yaminsky maintains a 50% ownership interest in TecTwin, and that he supplied TecTwin with the GAS platform. (Am. Compl. ¶¶ 87–88.) Should Avataa USA be granted the injunctive and monetary relief that it seeks, the result would impose a duty on Yaminsky to retrieve the relevant software from TecTwin and turn over proceeds that evidently were received by TecTwin from the exploitation of that software. TecTwin's ability to protect its legal interests in its software would be significantly impeded if this lawsuit proceeds without it. TecTwin is therefore a necessary party to this lawsuit.

Prior to addressing whether it is feasible to join TecTwin, the Court examines whether TecTwin is also an indispensable party under Rule 19. Section (b) of Rule 19 requires the Court to consider the following factors to determine whether a party is indispensable:

> 1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> 2) the extent to which any prejudice could be lessened or avoided by:
>    A) protective provisions in the judgment;
>    B) shaping the relief; or

C) other measures;
3) whether a judgment rendered in the person's absence would be adequate; and
4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

Without rehashing the conclusions made above, the Court reiterates that TecTwin's absence from this lawsuit would severely prejudice TecTwin because its ability to protect its legal interests would be impeded. The Court has considered whether it could shape the relief or implement other measures to lessen or avoid such prejudice to TecTwin, but finds that any such measures would inadvertently prejudice Avataa USA's recovery — Avataa USA seeks injunctive relief prohibiting the use of its trade secrets (and in practice, use of the GAS Platform), a return of its trade secrets (and the relevant software), and any proceeds collected by Defendants therefrom. Yaminsky is an alleged part owner of TecTwin and allegedly distributed Avataa USA's trade secrets and software to TecTwin. It is unclear to the Court whether Yaminsky possesses the power within TecTwin to strip the company of any trade secrets or software systems in its possession that may be implicated by an award in this lawsuit. To the extent Yaminsky has such authority, TecTwin's business interests would clash with Yaminsky's obligation pursuant to a judgment against him.

Moreover, Avataa USA's claims implicate TecTwin in the misappropriation of Avataa USA's trade secrets. *Rosenzweig v. Brunswick Corp.*, 2008 WL 3895485, at *9 (D.N.J. Aug. 20, 2008) (finding that the potential prejudice to a nonparty could not be remedied by other measures under Rule 19(b)(2) where the plaintiff's claims "either explicitly and directly or implicitly and indirectly allege wrongdoing on" the nonparty's part). The Court is thus unable to "fashion a modification or alternative to any potential judgment in favor of [Avataa USA] that would diminish [TecTwin's] potential prejudice." *Id.* Even if the Court could fashion such a remedy,

the Court anticipates that it would not adequately compensate Avataa USA, considering the relief sought, or constitute an efficient use of judicial machinery. *See id.*

With respect to Rule 19(b)(3)'s inquiry as to "whether a judgment rendered in the [party's] absence would be adequate," the Court applies the same reasoning under its Rule 19(b)(2) analysis to find TecTwin indispensable to this lawsuit. The Supreme Court has emphasized the "complete, consistent, and efficient settlement of controversies" and the importance of "settling disputes by wholes, whenever possible." *Provident Tradesmen Bank & Trust Co. v. Patterson*, 390 U.S. 102, 111 (1968). If this case were permitted to proceed as it stands, this Court would be forced to analyze Avataa USA's misappropriation claims in TecTwin's absence even though TecTwin is alleged to be a potential wrongdoer in the misappropriation of Avataa USA's trade secrets, insofar as Yaminsky is a principal and part owner of TecTwin and "misappropriated [Avataa USA's] GAS Platform, using TecTwin and Meyer as a front, signed agreements with VMWare and Ericsson based upon the stolen software, and now competes directly with [Avataa USA], contrary to the noncompete agreement and his duties to [Avataa USA]." (Am. Compl. ¶ 90.); *see Provident Tradesmen Bank & Trust Co.*, 390 U.S. at 112 n.10 (The inquiry under Rule 19 is whether "the decree be written so as to protect the legitimate interests of outsiders and, if so, [whether] such a decree [would] be adequate to the plaintiff's needs and an efficient use of judicial machinery.").

The Court declines to make a determination as to whether joinder of TecTwin is feasible based on the limited record before it. To the extent Avataa USA files a Second Amended Complaint naming TecTwin as a defendant, the jurisdictional issues pursuant to Rule 19(a) may be left for another day. Rule 19(a) sets forth three circumstances in which joinder is not feasible: when venue is improper, when the absentee is not subject to personal jurisdiction, or when joinder would destroy subject matter jurisdiction. *See Equal Emp't Opportunity Comm'n v. Peabody W.*

*Coal Co.*, 400 F.3d 774, 779 (9th Cir. 2005); *Wilson v. The Canada Life Assur. Co.*, Civ. No. 4:08-cv-1258, 2009 WL 532830, at *8 (M.D. Pa. Mar. 3, 2009) ("joinder is not feasible because [necessary party] is not subject to personal jurisdiction"). The Court is not prepared to foreclose Avataa USA's right to proceed with this action in this forum based on threadbare assertions about whether TecTwin is subject to jurisdiction in this Court.[4] Rather, the Court believes it is in the interest of equity and good conscience to address the "feasibility" of TecTwin's inclusion in this lawsuit only after Avataa USA has repled its claims against TecTwin and attempted to establish this Court's jurisdiction over TecTwin.

The Court will accordingly dismiss the Amended Complaint pursuant to Rule 12(b)(7) because Avataa USA failed to join TecTwin, a necessary and indispensable party under Rule 19. The dismissal will be without prejudice, such that Avataa USA may file a Second Amended Complaint, naming TecTwin as a defendant, if it wishes to proceed with this litigation before the Court. Jurisdictional questions as to TecTwin may be more appropriately addressed on a subsequent motion to dismiss after Avataa USA is afforded the opportunity to replead against TecTwin.

In light of the Court's decision to dismiss the Amended Complaint based on Avataa USA's failure to join TecTwin as a necessary and indispensable party, the Court does not reach Defendants' arguments for dismissal of the Amended Complaint based on Rule 12(b)(6).

## IV. CONCLUSION

For the reasons stated above, Defendants' motions will be **GRANTED**. The Court will **DISMISS** Avataa USA's Amended Complaint without prejudice. Avataa USA will be given leave to file a Second Amended Complaint, limited to remedying the defects identified herein, within 30

[4] (*See* Verdant Moving Br. at 30–32; Yaminksy Moving Br. at 34–36.)

days. Failure to cure the defects by that date may result in this matter being dismissed with prejudice. Finally, the Clerk of Court will be instructed to **ADMINISTRATIVELY TERMINATE** this case pending further submissions from the parties. An appropriate Order will follow.

Date: October 31, 2026

s/ Zahid N. Quraishi
**ZAHID N. QURAISHI**
**UNITED STATES DISTRICT JUDGE**